Lloyd A. DENTON et al., Appellants,

v.

Franklin M. BUIE et al., Appellees.

No. 15235.

Court of Civil Appeals of Texas, San Antonio.

July 24, 1974.

Luther H. Soules, III, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, for appellants.

Tuck R. Chapin, Gray, Keene, Gardner & Robison, Inc., James K. Gardner, San Antonio, for appellees.

CADENA, Justice.

This is an appeal by Lloyd A. Denton and William S. Watson, two of several defendants below, from a judgment awarding plaintiffs, Franklin M. Buie and 15 other homeowners in Kenney Oaks Subdivision, in San Antonio, damages, in accordance with a jury verdict, for depreciation in the value of their homes as a result of the construction of certain residences which, according to plaintiffs, did not comply with restrictions applicable to the subdivision.

Kenney Oaks was developed by Bel-Air Housing Corporation, of which Denton is president and principal shareholder. Denton and Watson are sued in their capacities as members of the architectural committee established by the restrictions for the purpose of insuring compliance with· the plan for development of the subdivision. Also named as defendants were John Wilkins; Chaparral Industries, Inc., d/b/a Chaparral Homes; First General Realty Corporation; Jack Gueringer; and Pacesetter Homes, Inc.

The jury made separate findings as to the damage suffered by each defendant. The total amount of the damages is $16,010.00, and the judgment grants plaintiffs recovery of this amount against Denton and Watson.

The builders of the homes in question will be referred to in this opinion as Wilkins and Gueringer, ignoring the corporations through which they carried on their businesses. Wilkins was building six homes on lots purchased by him from Bel-Air Housing Corporation, while Gueringer was building seven homes on lots purchased from Bel-Air. At the time they purchased the lots, Wilkins and Gueringer were told by Denton, president of Bel-Air, that the minimum floor area for homes in the subdivision was 1600 square feet, when in fact the restrictions required that one-story structures contain a floor area of not less than 1800 square feet and that two-story or split-level residences have a floor area of not less than 1950 square feet. As Wilkins and Gueringer were laying foundations, several of the residents noted that the homes would not meet the minimum floor area requirements and called this fact to the attention of the builders, who then revised their plans and submitted them to the architectural committee.

One of the applicable restrictions prohibited the erection of any structure without the approval by the architectural committee of the plans, specifications and plot plan showing the location of the structure "as to the conformity and harmony of external design with existing structures in the subdivision and as to location of the building with respect to topography, landscaping and finished ground elevations." The instrument containing the restrictions provided that the architectural committee should consist of Denton, his wife, and Watson.

Denton and Watson examined the plans and specifications submitted by Wilkins and Gueringer and gave to each builder a letter stating that the committee had no objection to the submitted plans and that the plans were approved "subject to the provisions of the deed restrictions in force." Wilkins and Gueringer then continued with the construction of the 13 homes and plaintiffs filed this suit.

Plaintiffs alleged that the Wilkins and Gueringer homes did not comply with the minimum floor area requirements; that some of the homes did not comply with the restriction requiring that all homes be of at least 75 percent masonry construction, except where, in case of split-level construction, the architectural committee lowered the masonry requirement to 50 percent; and that the homes being constructed by Wilkins and Gueringer were not in conformity and harmony of external design with existing structures in the subdivision.

Plaintiffs alleged that Denton and his employee, Watson, as members of the architectural committee, acted in an arbitrary, capricious, unfair and improper manner in approving the plans submitted by Wilkins and Gueringer. Plaintiffs contended that, since Denton had erroneously informed Wilkins and Gueringer that the minimum floor area requirement was 1600 square feet, Denton and his employee, Watson, were fearful that Wilkins and Gueringer would either sue Bel-Air Housing Corporation, which was described as, in effect, Denton's alter ego, for damages, or would insist that the sale of the 13 lots be rescinded and the purchase money returned to them. Plaintiffs assert that the plans were approved solely to insure that Wilkins and Gueringer would not sue Bel-Air or rescind the sale of the lots, without reference to whether the proposed references were in conformity and harmony of external design with existing structures in the subdivision.

In the alternative, plaintiffs alleged that Denton was guilty of negligence in misinforming Gueringer and Wilkins concerning the floor area requirements, and that both Denton and Watson were negligent in approving the submitted plans without properly examining them and without going to the construction sites to determine whether the proposed residences were in conformity and harmony of external design with existing structures.

The jury found that all residences being constructed by Wilkins and Gueringer complied with the restrictions relating to minimum floor area. However, the jury found that one of the Gueringer structures and two of the Wilkins houses are not in conformity and harmony of external design with existing structures in the subdivision, and that one of the Wilkins homes did not comply with the masonry requirements.

The jury further found that Denton and Watson acted arbitrarily and capriciously in approving the plans submitted by Wilkins and Gueringer.

The jury's findings relating to damages were based solely on the depreciation in value of existing residences resulting from the fact that one Gueringer and two Wilkins houses were not in conformity and harmony of external design with existing structures. No damages were awarded for the masonry deficiency in the one Wilkins house, but the judgment ordered Wilkins to increase the amount of masonry used on such house so that it would conform to the applicable restrictions.

Appellants present several points asserting that (1) members of an architectural committee are not liable in damages for decisions made in their capacity as members of such committee, even if the decision is arbitrary and capricious; (2) the trial court erred in refusing to give appellants' requested definition of "conformity and harmony of design"; (3) the trial court erred in overruling appellants' motion that, in response to written questions submitted to the court by the jury, the trial court submit additional instructions; (4) the trial court erred in overruling appellants' objections and special exceptions to the special issues submitted; (5) the court could not properly render judgment in the case because of the absence of an indispensable party; and (6) the evidence is legally insufficient to support the jury's answer to the damage issues.

Since we have concluded that there is no evidence in the record to support the jury's finding of damages, we do not consider the other points urged by appellants.

As already pointed out, the award of damages was based solely on the depreciation in value of plaintiffs' homes because three of the new homes under construction were not in conformity and harmony of external design with the existing structures in the subdivision.

Only one witness, R. N. White, a real estate appraiser, testified concerning the depreciation in value of existing structures as a result of the claimed violations of the restrictions. It is clear that White's testimony was based on the assumption that all, or at least most, of the Gueringer and Wilkins structures failed to comply with the restriction prescribing minimun floor areas. He testified that his testimony concerning the value of plaintiffs' homes before the new construction and after the new construction was based on the assumption that each of the Gueringer and Wilkins houses were below the minimum requirements. He further stated that his estimates of the "after" value of plaintiffs' homes were based on the assumption that none of the new structures contained the prescribed minimum floor area, and that such estimate "had nothing to do with any— this business of conformity or harmony or anything else, just that the houses . . . did not meet the square footage." He testified further that, even if all of the Gueringer and Wilkins homes complied with all of the deed restrictions his testimony as to the amount of damage suffered by the individual plaintiffs would remain the same, since his estimate of depreciations in value was based on his opinion concerning the result of "underdevelopment" in the area by Wilkins and Gueringer.

No issues were submitted inquiring whether the new structures failed to meet the restriction establishing a minimum cost for homes in the subdivision.

■ Since the jury found that all of the new structures satisfied the minimum floor area requirements established by the restrictions, White's testimony relating to damage to existing structures is based on a factual situation which is nonexistent. Clearly, testimony as to diminution in value of existing structures resulting from the introduction into a subdivision of structures not in compliance with minimum space requirements can support an award of damages only if the new structures in fact fail to comply with restrictions relating to area. Such evidence is no evidence of diminution in value caused by any other factor. Specifically, as applicable to this case, it is no evidence of damage resulting from the fact that three of the new structures fail to meet the requirement that new construction be in conformity and harmony of external design with existing structures.

Nowhere in the 1,559-page statement of facts is there any testimony which would give a fact-finder any guidance whatever in determining the depreciative effect of the failure of three of thirteen new structures to be in conformity and harmony of external design with existing structures in the subdivision.

■ By way of cross-points, plaintiffs assert that the trial court erred in failing to submit issues requested by them inquiring whether Denton, Watson, Wilkins and Gueringer were negligent. The error in refusing to submit such issues, if error it was, must be considered as harmless. Even if it be assumed that such issues would have been answered favorably to plaintiffs, the verdict could have formed no basis for a judgment in their favor, since they failed to present any evidence which could form the basis for an award of damages.

The judgment of the trial court awarding plaintiffs damages as against Lloyd A. Denton and William B. Watson is reversed and judgment is here rendered that plaintiffs take nothing against Denton and Watson.